UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO CRUZ TRUJILLO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GOMEZ, et al.,<br><br>　　　　　Defendants. | Case No. 1:14-cv-01370-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S CASE BE DISMISSED FOR FAILURE TO EXHAUST AVAILABLE ADMINSITRATIVE REMEDIES<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DENYING PLAINTIFF'S REQUEST TO FILE ADDITIONAL EXHIBITS |

## I. BACKGROUND

Guillermo Trujillo ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This action now proceeds on Plaintiff's Third Amended Complaint (ECF No. 17), on Plaintiff's claims against Officers Gomez, Juarez, and Fernandez for excessive force in violation of the Eighth Amendment. (ECF Nos. 19, 21, & 98). These claims stem from Plaintiff's allegation that defendant Gomez used unprovoked force against Plaintiff when he slammed Plaintiff against a wall and twisted Plaintiff's arms, and the allegation that defendants Juarez and Fernandez used unprovoked force against Plaintiff when they pepper sprayed Plaintiff.

On August 11, 2017, Defendants filed a motion for summary judgment on the ground

1

that Plaintiff failed to exhaust his administrative remedies. (ECF Nos. 81 & 82). Defendants' motion was denied because there was a genuine dispute of material fact regarding whether administrative remedies were available to Plaintiff (ECF Nos. 94 & 99), but Defendants were given the opportunity to request an evidentiary hearing "on the issue of whether Plaintiff properly submitted grievances that prison officials improperly failed to process" (ECF No. 99, p. 2).

On April 4, 2018, Defendants requested an evidentiary hearing. (ECF No. 102). The Court held the evidentiary hearing on June 29, 2018. After the hearing, the Court allowed the parties to file supplemental briefing. (ECF No. 113). On August 15, 2018, Defendants filed their supplemental brief. (ECF No. 118). Plaintiff did not file a supplemental brief.

Based on the evidence presented at the hearing, the Court finds that Plaintiff failed to exhaust his available administrative remedies. Accordingly, the Court will recommend that Plaintiff's case be dismissed because Plaintiff failed to exhaust his available administrative remedies.

## II. LEGAL STANDARDS

### A. Exhaustion

"The California prison grievance system has three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011) & Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)). See also Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….").

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (2016).

"Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Reyes, 810 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

As discussed in Ross, 136 S.Ct. at 1862, there are no "special circumstances" exceptions to the exhaustion requirement. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." Id. at 1856. The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819. . . .
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Id. at 1859–60.

"When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017).

The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id.

If the Court concludes that Plaintiff has failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**III.  SUMMARY OF RELEVANT PORTIONS OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff's Third Amended Complaint ("TAC") alleges that on December 23, 2013, Plaintiff was confined at Kern Valley State Prison ("KVSP") when prison officials started harassing and fomenting rumors of "getting" Plaintiff, and targeting him because Plaintiff had filed 602 grievances, which were never logged and were returned to Plaintiff.

On October 22, 2014, Plaintiff went to school and told Officer Gomez that Plaintiff needed to get his legal copies of a motion to file with the courts. On Plaintiff's way back to the building from class due to not feeling well, Plaintiff stopped at the law library for legal copies. On the way back from the law library, Officer Gomez approached Plaintiff from behind and asked if Plaintiff was going to school. Plaintiff responded no. Officer Gomez became very upset and slammed Plaintiff against the concrete wall next to the library outside window, face-first, and twisted his arms to place them in restraints. Plaintiff felt pain on the left side of his face and his shoulders.

Officer Gomez told Plaintiff to go to the facility program holding cell area for a strip search. Plaintiff complied. After the search and still naked inside the holding cage, Officers Juarez and Fernandez took out their pepper spray and sprayed Plaintiff for 4 to 5 seconds. Plaintiff believes the officers used force out of retaliation and harassment.

Plaintiff's TAC only named Biter in the list of defendants. However, at times, when Plaintiff discussed Officer Gomez, he referred to him as "Defendant Gomez." And, while Plaintiff never indicated in his complaint that Sergeant Juarez or Fernandez were meant to be included as defendants, he later clarified that Gomez, Juarez, and Fernandez were meant to be included as defendants (ECF No. 20).

## IV. SUMMARY OF EVIDENCE PRESENTED AT EVIDENTIARY HEARING

Plaintiff appeared on his own behalf. Counsel Derek Lee appeared on behalf of Defendants.

Plaintiff called himself as a witness. Defendants called Aaron Gomez and Jorge Fernandez as witnesses.[1]

As evidence, Defendants submitted the processing history and underlying appeal for Log Nos. KVSP-O-17-00197 (Exhibit E),[2] KVSP-O-14-03684 (Exhibit B), KVSP-16-00999 (Exhibit D), KVSP-15-00020 (Exhibit H), KVSP-15-02069 (Exhibit I), and KVSP-15-02070 (Exhibit J); Plaintiff's complaint filed September 2, 2014 (Exhibit F); and Plaintiff's amended complaint filed May 11, 2015, which was filed in Case No. 1:14-cv-01797, E.D. CA (Exhibit G).

Plaintiff did not submit any of his own evidence.[3]

---

[1] Defendants requested that the evidentiary hearing be continued because one of their witnesses would not be able to attend the hearing. (ECF No. 110). That request was denied (ECF No. 111), and Defendants were not able to call that witness at the hearing. However, given that the Court is recommending that this case be dismissed, the Court finds that there was no prejudice to Defendants in holding the hearing even though Defendants were not able to call one of their witnesses.

[2] Plaintiff introduced Defendants' Exhibit E into evidence. Tr. at 14:23-16:11. Exhibit E includes a copy of the 602 Plaintiff submitted in support of his opposition to Defendants' motion for summary judgment (ECF No. 87, pgs. 5-7).

[3] Plaintiff did state that he was not allowed to bring all of his exhibits with him to court, and so requested leave to submit them. Tr. at 16:11-25; 41:24-42:2. Plaintiff's request will be denied. Plaintiff did not include these exhibits in his opposition to Defendants' motion for summary judgment. Thus, it appears that Plaintiff did not believe that they were relevant to the issue of whether he exhausted his administrative remedies. But more

A. Undisputed Facts

At the evidentiary hearing, the parties agreed that the following facts are undisputed:

1. "At all times relevant to the allegations in the third amended complaint, Plaintiff Guillermo Trujillo, AA-2974, was a state inmate incarcerated at Kern Valley State Prison, KVSP, in Delano, California." Transcript of Proceedings before Magistrate Judge Erica P. Grosjean, June 29, 2018 ("Tr.") at 4:17-5:21.

2. "Plaintiff filed the third amended complaint, the operative complaint, on February 16, 2016." Id. at 5:24-6:2; 5:17-21.

3. "The conduct at issue in the third amended complaint took place on October 22nd, 2014." Id. at 6:3-6; 5:17-21.

4. "Plaintiff filed the initial complaint on September 2nd, 2014." Id. at 6:7-9; 5:17-21.

5. "Plaintiff filed the third amended complaint on February 16th, 2016." Id. at 6:10-12; 5:17-21.

6. "Plaintiff alleges Defendant Gomez shoved him against a wall and twisted his arms to place them in restraints on October 22nd, 2014, when plaintiff informed him he was not going to school." Id. at 6:16-21; 5:17-21.

7. "Plaintiff claims Defendants Fernandez and Juarez excessively pepper sprayed him while he was naked in a holding cage." Id. at 7:1-4; 5:17-21.

8. "Kern Valley State Prison has an inmate grievance process for custody appeals, which contains three levels of review. An inmate must process his grievance through the third level of review in order to exhaust administrative remedies." Id. at 7:5-10; 5:17-21.

B. Summary of Evidence Presented at Evidentiary Hearing

   *i. Plaintiff's Testimony*

Plaintiff testified that he filed his 602 on October 22, 2014. Id. at 18:5-7. (Notably,

---

importantly, the Court gave the parties a deadline to file exhibit lists (ECF No. 104, p. 3), and Plaintiff failed to file such a list. Accordingly, Plaintiff's request to file additional exhibits is DENIED.

Plaintiff never admitted into evidence any copy of the supposed 602 that he says he filed about this incident.) Plaintiff testified that he submitted that original 602 about the events alleged in the complaint while he was in ASU1. Id. at 13:8-9. Plaintiff testified that he never received a response to that 602, despite Plaintiff filing 602s regarding the loss or delay of his original 602. Id. at 13:9-18. To date, Plaintiff testified that his 602 is still under review at the first-level screening because he never received a response. Id. at 13:19-20.

Plaintiff introduced into evidence Defendants' Exhibit E, which Plaintiff testified was a copy of a 602 he filed complaining of the loss or delay of his original 602. Id. at 14:15-16:11. The 602 he admitted into evidence was titled "Lost or Delay 602 Appeal." Exhibit E, p. 2. It was dated October 22, 2014—the same date as the alleged incident. Id. at 2-3; ECF No. 17. In other words, it was dated on the date of the incident yet purported to complain that a 602 about that same incident had been lost and not responded to. The text of this 602 did not mention anything about a lost 602—instead it described the underlying claim of excessive force.[4] Plaintiff testified that he filed this 602, dated on the same the date of the incident, in order to track down his original 602, which he no longer has. Id. at 14:23-15:3; 15:17-25.

Plaintiff also testified that in his original 602 he forgot to write down the facts regarding the incident with defendant Gomez. Id. at 17:6-9. He "just wrote down the incident that happened while we were inside the holding cell where [he] never stated the facts regarding to what led to the excessive force being applied on me in the holding cell by Sergeant Castro --

---

[4] Specifically, in the section of the 602 titled "Explain your issue," Plaintiff stated: "On the morning of Oct-22-14 I went to school and informed C/O Gomez that I was a (PLU) and needed to make legal copies of my motion to file with the courts. After I check in with instructor Mr. Hernandez ABE 1 Class I went to law library to received my legal copies, C/O Gomez told me that if I was going to school? I then told him I was not he immediately became upset and slam me face first to concrete wall next to the law library twisted both arms to place them in restraint's at that point Officer Gomez told me that he wanted me to go to Facility A program cage for a strip search and I complied. After the strip search was done and still naked inside holding cage, Sgt Juarez, and Fernandez came to the holding cage I was in and took out their weapon's of O/C pepper spray and started spraying me inside the cage for 4 to 5 second's. I did nothing to justified the use of force nor did I violate any C.D.C.R. rules. Officer Gomez also took my legal documents which denied access to the courts." Exhibit E, pgs. 2-3.

7

Juarez and Fernandez." Id. at 17:10-14. When asked by the Court, "[w]hat is your best memory to what you wrote in that 602," Plaintiff stated "[t]hat Officer Gomez, Sergeant Juarez and Fernandez use of excessive force applied on me." Id. at 18:8-11.

When asked by the Court, "[a]nything else that you remember that you wrote," Plaintiff responded "[n]o. That's basically it, that I went out to class, I informed the instructor. And just due to the fact that I was sent back because I wasn't feeling good that Officer Gomez, Fernandez and Sergeant Juarez used excessive force against me." Id. at 18:12-18. Plaintiff did not introduce a copy of the original 602 he allegedly filed on October 22, 2014, into evidence.

When asked by the Court, "[a]nything -- any other facts that you want to say in your testimony," Plaintiff responded "[n]o. That's basically it." Id. at 18:19-21.

### ii. Cross-examination of Plaintiff

On cross, Plaintiff admitted that Exhibit B included another 602, which he submitted on October 22, 2014—the same date of the incident and the same date of the purported 602 about a lost 602 (id. at 19:21-22; 21:2-5), and that that 602 related to at least some of his allegations in this case. Id. at 21:17-23. Plaintiff admitted that he in fact received a response to this 602, dated on the date of the incident and covering at least some of the underlying conduct, but Plaintiff testified that he also submitted another 602 which had not received a response. Id. at 22:2-14. When asked, "[s]o it's fair to say that you received a response to your allegations regarding Defendant Gomez," Plaintiff responded "[r]ight." Id. at 23:1-3. Plaintiff never testified that he appealed this 602 to the third level of review.

Plaintiff also admitted that a separate case involving the same allegations against Defendants was dismissed for failure to exhaust. Id. at 26:21-29:9.

Plaintiff was also asked about the "Motion to Squash Defendants' Motion for Summary Judgment for Non-Exhaustion" that he filed in this case. Id. at 30:8-11. When asked, "is it fair to say that this document is suggesting that you have now exhausted administrative remedies in this case," Plaintiff responded "[r]ight." Id. at 31:1-3. However, when asked about the four grievances cited to in the motion to "squash" that Plaintiff alleged showed that he exhausted his administrative remedies in this case, Plaintiff admitted that none of them included allegations

of excessive force against Defendants related to the October 22 incident. Id. at 31:7-37:18.

### iii. Aaron Gomez's Testimony

Mr. Gomez testified that he is a correctional officer at Kern Valley State Prison, and that he has held that position for twelve years (including during 2014). Id. at 43:16-22.

Mr. Gomez further testified that he has no responsibilities regarding the appeals process or the handling of appeals. Id. at 44:5-7.

Plaintiff did not cross-examine Mr. Gomez. Id. at 45:22-24.

### iv. Jorge Fernandez's Testimony

Mr. Fernandez testified that he is a correctional officer as Kern Valley State Prison, and that he has held that position going on thirteen years (including during 2014). Id. at 46:22-47:3. Mr. Fernandez worked at the facility in which Plaintiff was housed. Id. at 47:4-6.

Mr. Fernandez further testified that he has no responsibilities regarding processing of grievances or interacting with appeals staff. Id. at 47:22-48:3.

Plaintiff did not cross-examine Mr. Fernandez. Id. at 48:22-24.

## V. **Analysis of Evidence**

It is undisputed that the California Department of Corrections and Rehabilitation has an inmate grievance process for custody appeals, and that an inmate must process his grievance through the third level in order to exhaust administrative remedies.[5] Tr. at 7:5-10. It is also undisputed that Plaintiff submitted an appeal covering the allegations in the complaint, and received a response from the prison, yet Plaintiff did not pursue that 602 all stages of this administrative process needed to exhaust his administrative remedies. As Defendants have carried their burden to show that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino II, 747 F.3d at 1172. However, "the ultimate burden of proof remains with the defendant." Id.

---

[5] Inmate appeals or grievances are also referred to as "602s."

9

1 | Thus, the question is whether the grievances procedures were "available" to Plaintiff, in light of Ninth Circuit law that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies." Andres, 867 F.3d at 1079.

Here, Plaintiff failed to meet his burden. Plaintiff testified that he submitted a different 602 covering the allegations in the complaint, but that the appeals office failed to respond to that other 602, thus rendering the process unavailable to him. Plaintiff provided as evidence his testimony that on October 22, 2014, he filed a 602 related to the incidents described in the complaint. Plaintiff also provided a purported 602 related to the incidents described in the complaint (Exhibit E), which he alleged he submitted to follow-up on the loss or delay of his original appeal. However, Plaintiff's testimony is not credible.

To begin, while Plaintiff testified that he filed the 602 that is included in Exhibit E in order to inquire about the 602 he filed on October 22, 2014, the 602 does not support Plaintiff's testimony. It is true that the subject of the appeal was listed as "Lost or Delay 602 Appeal," but the 602 itself does not mention or inquire about any prior 602s. Instead, it related to the excessive force incidents described in the complaint. Moreover, Plaintiff dated the grievance October 22, 2014, which is the day of the alleged incident. Accordingly, the 602 does not support Plaintiff's testimony that Plaintiff submitted it in order to follow-up on a prior grievance. The Court doubts the authenticity of this document.

Additionally, in Plaintiff's opposition to Defendants' motion for summary judgment, Plaintiff (mis)represented to the Court that the 602 included in Exhibit E was the original 602 he submitted. (ECF No. 87, p. 1). In that opposition, Plaintiff stated that he "filed a 602 grievance on Oct-22-2014," and referred the Court to the 602 he attached. (Id.). The 602 that Plaintiff attached is the same 602 as the one included in Exhibit E. Id. at 6-7; Exhibit E, pgs. 2-3. The Court relied on this representation when denying Defendants' motion for summary judgment. (ECF No. 94, pgs. 9-10; ECF No. 99). However, at the evidentiary hearing Plaintiff testified, on the contrary, that he thought the 602 was "the second or third 602 regarding [] the lost or delay of the original 602," and that Plaintiff filed it "to track down the original 602." Tr.

at 15:18-25. Given that the issue listed in the 602 was "Lost or Delay 602 Appeal," and Plaintiff's testimony at the evidentiary hearing, it appears that this 602 was not the original 602 Plaintiff submitted. Plaintiff did not provide an explanation as to why he misrepresented the follow-up 602 as the original in his opposition to Defendants' motion for summary judgment.

Plaintiff's misrepresentations do not end there. Plaintiff initially testified that he did not receive a response to his 602s related to the incidents described in the complaint. However, on cross examination, Plaintiff admitted that he did in fact receive a response to at least one of the 602s he filed (the response, as well as the 602 Plaintiff submitted, were admitted as Exhibit B).[6] It thus appears that Plaintiff received a response to his 602 in a timely manner (see below), and that Plaintiff had an opportunity to appeal that response but failed to do so. Thus, the administrative remedy was available to Plaintiff, he simply failed to avail himself of the process. Plaintiff failed to provide an explanation as to why he testified that he never received a response even though he did receive a response, or why he did not file an appeal after receiving the response.

Finally, the Court is skeptical of Plaintiff's allegations regarding delays in processing his 602s. Plaintiff testified about delays in the processing of his 602s related to the incident described in his complaint, but he did not challenge the admissibly or accuracy of the documents admitted as Exhibit B. And, according to those documents, Plaintiff's 602 dated October 22, 2014, was received on November 5, 2014, and Plaintiff was interviewed by R. Speidell related to the allegations in the 602 on November 18, 2014 (Exhibit B, pgs. 1-3). While it is not entirely clear when Plaintiff actually received the response, it does not appear that there was any significant delay in the processing of this 602.

Thus, while Plaintiff was respectful and responsive, given the discrepancies in Plaintiff's testimony the Court finds that Plaintiff's testimony was not credible.

---

[6] The Court notes that the facts alleged in the 602 are similar to the facts alleged in the complaint, including the date of the incident, the use of force by defendant Gomez, an ordered strip search, and Plaintiff getting pepper sprayed for four to five seconds. Exhibit B, p. 5. However, in the 602, Plaintiff alleges that it was Correctional Officer Gutierrez that pepper sprayed him. Id. There is no mention of defendants Juarez or Fernandez. Id. at 3-5

For the foregoing reasons, the Court finds that Plaintiff failed to meet his burden of showing that the generally available administrative remedies were unavailable to him. Therefore, the Court will recommend that this case be dismissed for failure to exhaust.

## VII. RECOMMENDATIONS

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that**:**

1. This action be dismissed because Plaintiff failed to exhaust his available administrative remedies before filing this action; and

2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within twenty-one (21) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 7, 2018**     /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE